**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Paul Bastian, OSB No. 062706**
paul@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
      Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **SHEILA GUND**, <br><br>       PLAINTIFF, <br><br>     v. <br><br> **MARION COUNTY, and STATE OF OREGON,** <br><br>       DEFENDANTS. | Case No. 6:24-cv-1448 <br><br> **COMPLAINT** <br> (Title II of the ADA, § 504 of the Rehabilitation Act of 1973; 42 USC § 1983; pendant state claims) <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff brings this cause of action against Defendants and alleges as follows:

## I. NATURE OF THE ACTION

1.     This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and attorney fees and costs, to redress violations of Title II of the Americans With Disabilities Act, 42 USC § 12131 *et seq*., Section 504 of the

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

Rehabilitation Act of 1973, as amended, 29 USC § 701 *et seq.*, 42 USC § 1983, and for pendent Oregon law claims for false imprisonment and Public Accommodations discrimination.

2.    Defendants failed to provide adequate access to other auxiliary aids and services necessary to accommodate Plaintiff.

3.    Defendant Marion County, acting through the Marion County Sheriff's Office, failed to comply with Title II of the ADA, the Rehabilitation Act of 1973, and Oregon's law on public accommodations, which required it to accommodate Plaintiff, in connection with an incident that the Marion County Sheriff's Office responded to at a Deaf family and community camping event, which resulted in the arrest of John-John (JJ) Jimerson, described by Defendant Marion County in Marion County Sheriff's Office Case No. 23022614.

4.    Defendant Marion County, acting through the Marion County District Attorney, as well as the District Attorney's Office deputy district attorneys and staff, failed to comply with Title II of the ADA, the Rehabilitation Act of 1973, and Oregon's law on public accommodations, which required it to accommodate Plaintiff who was regarded as a crime victim and witness while pursuing Circuit Court criminal proceedings in *State of Oregon v. John-John Jimerson*, Marion County Case Nos. 23CR59241 and 23CR43009, DA No. 23-7820-A.

5.    Defendant State of Oregon, acting through the Oregon Judicial Department, the trial court administrator, and court staff, failed to comply with Title II of the ADA, the Rehabilitation Act of 1973, and the Oregon constitution, which required it to accommodate a crime victim with a disability during the Circuit Court criminal proceedings, *State of Oregon v. John-John Jimerson*, Marion County Case Nos. 23CR59241 and 23CR43009, DA No. 23-7820-A, by failing to provide the victim with an interpreter.

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

6.      Through their acts, conduct, policies, and practices, both Defendant Marion County and Defendant State of Oregon have and continue to discriminate against Plaintiff, who is deaf. Defendants failed to assess the Plaintiff's need for accommodations and did not provide necessary accommodations. Defendants denied Plaintiff adequate and equally effective means to communicate.

7.      All acts of the Marion County Sheriff and its deputies were within the course and scope of their employment with Marion County.

8.      All acts of District Attorney Paige Clarkson and her Deputy District Attorneys, Matthew D. Kemmy and Michael J. Kummerman, as well as District Attorney victims' assistance employees and other District Attorney employees, as alleged herein, were within the course and scope of their employment with Marion County and as part of their official functions on behalf of Defendant State of Oregon in prosecuting crimes.

9.      All acts of the employees of the State of Oregon Judicial Department as alleged herein were within the course and scope of their employment with the State of Oregon.

10.     As a result of Defendants' discriminatory conduct, acts, policies, and practices, Plaintiff has been denied accommodations.

11.     On September 3, 2023, Defendant Marion County failed to assess Plaintiff's needs for accommodations. In responding to an emergency at a Deaf camping facility, Camp Taloali, Defendant Marion County Sheriff's Deputies failed to arrange for a qualified American Sign Language interpreter before going to Camp Taloali. While at the camp, Defendant Marion County Sheriff's Deputies and other Marion County employees made the assumption that Plaintiff was either a witness or was the victim of domestic violence. Yet they failed to communicate with her in American Sign Language and did not provide a qualified American

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

Sign Language interpreter when speaking to her, thereby denying Plaintiff the ability to adequately communicate with them. Plaintiff was harmed because she could not effectively communicate with the hearing employees of the Marion County Sheriff's unit; her family unit was splintered due to the false arrest of Mr. Jimerson; and Plaintiff was directed not to have contact with Mr. Jimerson, her domestic partner, and the father of their child.

12.     While pursuing the criminal prosecution of Mr. Jimerson, both the State of Oregon acting through its Oregon Judicial Department and the Marion County District Attorney Paige Clarkson and employees of the Marion County District Attorney's Office failed to assess the needs of Plaintiff, a witness and a person regarded as the victim of domestic violence, for communication accommodations, and failed to provide Plaintiff with effective American Sign Language interpreters.

13.     The Marion County District Attorney failed to provide Plaintiff with qualified ASL interpreters for meetings with the District Attorney Victims' Assistance advocates. The Marion County District Attorney also failed to provide Plaintiff with qualified ASL interpreters in meetings with the Deputy District Attorneys prosecuting Mr. Jimerson.

14.     The Marion County District Attorney and the Oregon Judicial Department failed to provide Plaintiff with her own ASL interpreters when she attended court proceedings concerning Mr. Jimerson, thereby excluding her from meaningful observation, understanding, and participation in Court proceedings.

## II. JURISDICTION

15.     This Court has subject matter jurisdiction under 28 USC § 1331 (Federal Question).

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

16.     Venue is proper in this Judicial District pursuant to 28 USC § 1391(b) because the claim or a substantial part of the events giving rise to the claims herein occurred or arose in this Judicial District.

17.     On February 28, 2024, Plaintiff, through counsel, sent notice of tort claim against Marion County to Justine Flora, Risk Manager Marion County. On March 14, 2024, Plaintiff, through counsel, sent notice of tort claim against Marion County to Jane Vetto, Marion County Counsel.

18.     On or about March 15, 2024, Plaintiff, through counsel, sent notice of tort claim against the State of Oregon to the State of Oregon, Department of Administrative Services.

### III. PARTIES

19.     Plaintiff Sheila Gund, formerly known by her prior married name, Sheila Schatz (hereinafter "Plaintiff"), is a citizen of the United States of America.

20.     At all times relevant, Plaintiff was a resident of White City, Jackson County, Oregon.

21.     Plaintiff is an individual with a disability. Plaintiff is profoundly deaf. Plaintiff has been deaf her entire life. Plaintiff is also culturally d/Deaf.

22.     At all times material herein, Plaintiff was perceived by the Marion County Sheriff's Office, the Marion County District Attorney, and the State of Oregon Judicial Department as a crime victim, to wit, a person who was the victim of a domestic assault and battery. As a perceived crime victim, Plaintiff has the right under the Oregon Constitution to a meaningful role in the criminal justice system, a right to due dignity and respect, and a right to fair and impartial treatment. Or Const, Art I, § 42 (1), ORS 147.410.

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

23.     Plaintiff is a non-English-speaking person and is also a person with a disability. Plaintiff does not speak English. Plaintiff was denied the benefits of services provided by Marion County and the State of Oregon.

24.     Plaintiff's primary language is American Sign Language (ASL). Plaintiff uses ASL to communicate with other d/Deaf people. ASL is not a form of English. ASL is not signed English. ASL is a complete, natural language that has the same linguistic properties as spoken languages, with grammar that differs from English. ASL is expressed by movements of the hands and face. ASL was brought to America by Thomas Hopkins Gallaudet in order to educate American d/Deaf students. ASL is a complete, complex language that employs signs made with the hands and other movements, including facial expressions and postures of the body. It is a language distinct from English, with its own vocabulary and rules for grammar and syntax.

25.     Plaintiff also relies on ASL to communicate with hearing persons who are not proficient in ASL. Plaintiff requires the assistance of a qualified ASL interpreter to allow her to communicate effectively in person and in telephone communications with hearing persons who do not know ASL. Plaintiff cannot use standard video conferencing, such as Zoom, to communicate without the participation and assistance of a qualified ASL interpreter.

26.     Plaintiff is the mother of minor children. Since their earliest age, Plaintiff has communicated with her children using ASL. Although Plaintiff's children are able to hear, ASL is their primary language, and English is their second language. None of Plaintiff's children are qualified ASL or Deaf sign language interpreters.

27.     Defendant Marion County, Oregon (hereinafter "the County" or "Defendant County") is a political subdivision of the State of Oregon. Said Defendant is a public entity subject to Title II of the ADA. Said Defendant is also subject to the Rehabilitation Act of 1973

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

because it receives federal funding. Defendant Marion County has a law enforcement agency known as the Marion County Sheriff's Office, as well as the Marion County District Attorney's Office, which perform functions for Marion County. Communicating with and receiving reports from victims of crimes are services that Marion County provides. Marion County law enforcement officers and employees assigned to the District Attorney's Office are responsible under Oregon's laws on public accommodations and under Title II of the ADA to ensure effective communication with individuals who are deaf or hard of hearing by providing ASL interpreters to Deaf individuals.

28.     Defendant State of Oregon (hereinafter "the State" or "Defendant State") is a public entity subject to Title II of the ADA. Said Defendant is also subject to the Rehabilitation Act of 1973 because it receives federal funding. Said Defendant, through its Oregon Judicial Department (OJD), schedules and conducts court hearings at the Marion County Courthouse through its judges and court staff. The Oregon Judicial Department (OJD) is responsible under the Oregon constitution, under State statutes, under its own internal policy, and under Title II of the ADA for providing interpreters for in-court interpreting in criminal cases for non-English-speaking crime victims. Oregon Judicial Department is required to appoint a qualified interpreter in criminal proceedings to interpret the proceedings to her in open court pursuant to ORS 45.275 and ORS 45.285.

29.     The Americans With Disabilities Act and the Rehabilitation Act of 1973 require that persons with disabilities receive effective communication that results in meaningful access to a public entity's services.

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

## IV. GENERAL FACTUAL ALLEGATIONS

30.     For d/Deaf ("Deaf") or Hard of Hearing individuals who rely on ASL as their primary form of communication, the use of a qualified ASL interpreter is necessary to ensure effective communication between a Deaf or Hard of Hearing individual and an individual who does not use ASL to communicate. The use of a person who is not a qualified ASL interpreter to interpret communications between a Deaf person and an individual who does not use ASL to communicate is not an effective communication accommodation for the Deaf person.

31.     Providing a qualified ASL interpreter for Deaf individuals is necessary for effective communication.

32.     Lip reading usually does not provide effective communication accommodation for a Deaf individual and is generally far less effective than written communication. It is extremely difficult to lip-read English because only a small fraction of the sounds used in the language are clearly visible on the mouth, and many sounds that are visible look identical on the lips. In addition to these difficulties in lip reading, the ability to accurately lip read is affected by the speaker's facial bone structure, facial musculature, facial hair, lighting, and other external factors. Moreover, even if an ASL user were able to identify the sounds appearing on a speaker's lips, for the reason set forth above, she would not necessarily understand the English language or the vocabulary the speaker was using.

33.     Deaf people, in general, often avoid attempting to "voice" English to communicate with hearing people. Because most deaf people have never "heard" English, it is difficult for them to form words intelligible to hearing people. The expectation by hearing people that deaf persons should use their "voice" to communicate with hearing people is degrading and embarrassing to deaf people.

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

34.     In summary, the provision of qualified sign language interpreter services to Deaf individuals is both the necessary and preferred auxiliary aid necessary to allow Deaf individuals who use ASL to effectively communicate with hearing people.

**Facts in Respect to Plaintiff**

35.     Camp Taloali is a summer camp in Marion County for Deaf children and the children of Deaf parents who use ASL. At the end of August and early September, Camp Taloali holds a recreational camp event for Deaf families to socialize under the umbrella of the World Deaf Timberfest. In 2023, Andrea Albers, who is Deaf, was the chairperson for the campground.

36.     On or about August 29, 2023, Plaintiff and her family, including all of her adult and teenage children, her domestic partner, John-John Gregory Jimerson (hereafter JJ Jimerson), and Plaintiff's five-year-old child arrived at Camp Taloali property for the World Deaf Timberfest event. They planned to camp until September 4, 2023. An incident on September 3, 2023, cut their camping trip short.

37.     On September 3, 2023, during the early morning hours, several Deaf campers were sitting on benches around a bonfire at the event, socializing with each other. Plaintiff was using ASL to chat and become acquainted with other Deaf campers whom she had not previously met. As Plaintiff was conversing with another Deaf woman, she saw the woman's jaw drop. Plaintiff turned around and saw a man with a hat on getting up from the ground. She then saw JJ Jimerson on the opposite side of the fire pit, rubbing his head and temple area. Plaintiff observed that Mr. Jimerson's upper cheek and temple were swollen, and his nose was also swelling.

38.     Plaintiff learned that someone threw a rock at Mr. Jimerson. Plaintiff was informed by other Deaf campers that the man with the hat whom she had seen rising up from the

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

ground threw a rock at Mr. Jimerson. Plaintiff went to where the man with the hat had been sitting, but he had left by then. Around that time, two other men were throwing full cans of beer, and one of the cans struck Mr. Jimerson on the same side of the head where he had been struck by the rock.

39.     Mr. Jimerson asked Plaintiff to call 911. Plaintiff attempted to call 911, but her mobile telephone would not connect. Plaintiff assumed that either the battery was low or that she was outside of a mobile service area. Plaintiff tried borrowing the mobile telephones of other campers, but the other telephones she tried also would not connect.

40.     Plaintiff asked Mr. Jimerson to return to their campsite to see if charging the mobile telephone would help her to call 911. Plaintiff was eager to request emergency assistance for Mr. Jimerson because he was reporting pain in his head.

41.     When Plaintiff and Mr. Jimerson returned to their campsite, Plaintiff began charging her telephone. While waiting for her telephone to charge, she began changing the diapers of her disabled, five-year-old son, who wears diapers at night. Plaintiff asked Mr. Jimerson to rest in their SUV while she cleaned their son's bottom, and she waited for the telephone to charge before calling 911. Before Mr. Jimerson got into the SUV to rest, Plaintiff noticed that the side of Mr. Jimerson's head was still swollen. She was concerned that he had a concussion and might be bleeding in his skull.

42.     While Plaintiff was cleaning her disabled son, her nose started bleeding in the area where she has some cold sores and a nose stud.

43.     Plaintiff signed in ASL to one of her teenage sons to call 911 for emergency care for Mr. Jimerson and for the police to arrest the men who hit Mr. Jimerson with a rock and beer can. Plaintiff was able to see her son make a telephone call, but she could not hear what her son

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

told the 911 operator. The 911 emergency recording demonstrated that the 911 dispatcher was told that an incident occurred at a "deaf festival" and that the people involved used ASL to communicate.

44.    That morning, September 3, 2023, a firetruck and ambulance with emergency responders, and a Marion County Sheriff's Office patrol car arrived at Camp Taloali.

45.    Marion County did not provide a certified ASL interpreter to Plaintiff on September 3, 2023. Marion County refused Plaintiff's requests for a certified ASL Interpreter. Without such an interpreter, Plaintiff could not effectively communicate with Sheriff's Deputies about an alleged crime because of her disability and was denied meaningful access to services. Without such an ASL interpreter, Plaintiff could not effectively communicate with emergency responders who sought to interview her about her physical condition.

46.    The medics who arrived at the camp failed to accommodate Plaintiff by failing to provide her with a qualified ASL interpreter. The medics talked to Plaintiff, but she could not hear or understand them as there was no ASL interpreter with them. Although the medics identified Plaintiff as a person with a disability, rather than accommodating her with a qualified ASL interpreter, the medics ignored Plaintiff and began talking to her teenage sons. Plaintiff's sons signed to Plaintiff that the medics wanted to use them as interpreters. Plaintiff signed to her sons to tell the medics that she wanted an ASL interpreter for herself and Mr. Jimerson and not to use her children as interpreters. The medics continued to direct Plaintiff's sons to interpret.

47.    The medics denied Plaintiff's other requested accommodations. Plaintiff saw that the medics had paper in their hands. Plaintiff, through her sons, asked for paper and a pen to write the medics a note explaining that Mr. Jimerson needed medical care. The medics did not

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

give Plaintiff paper and a pen to write notes. Plaintiff could see that the medics were talking to the Sheriff's deputies.

48.     Marion County Sheriff's deputies failed to accommodate Plaintiff by failing to provide her with a qualified ASL interpreter. Marion County Sheriff's deputies talked to Plaintiff but she could not hear or understand them. Plaintiff struggled to communicate with the Sheriff's deputies that Mr. Jimerson was the victim and that he needed medical care. Plaintiff signed that she needed an interpreter. A Deaf bystander, Veronica Trueblood, talked to her daughter, who is hearing. Ms. Trueblood's daughter asked the Sheriff's deputies to provide an ASL interpreter for Plaintiff.

49.     The Sheriff's deputies denied Plaintiff other requested accommodations. Plaintiff used ASL to sign to her sons to ask the Sheriff's deputies for paper and pen. The deputies refused to provide the paper and pencil.

50.     The deputies then went to Plaintiff's vehicle, an SUV, and opened the vehicle doors of Plaintiff's SUV where Mr. Jimerson was sleeping. The deputies did not have a warrant to search Plaintiff's vehicle and they did not have Plaintiff's consent to enter her vehicle. Plaintiff observed that when the deputies opened the door to her SUV the deputies' mouths were moving but she could not hear what they were saying. Plaintiff's sons signed to her that the deputies were screaming and yelling at Mr. Jimerson. Because Mr. Jimerson is Deaf and sleeping, he could not hear the deputies. The Sheriff's deputies then pulled Mr. Jimerson out of the SUV by his feet while he was sleeping. The Sheriff's deputies put handcuffs on Mr. Jimerson and pulled on his arms until he was standing. It appeared that Mr. Jimerson was confused. Plaintiff's sons signed to Plaintiff that Mr. Jimerson was vocalizing pain. The Sheriff's deputies grasped Mr. Jimerson and forced him to get into a patrol car.

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

51.    The Sheriff's deputies then falsely imprisoned Plaintiff. The deputies directed Plaintiff to move to the other side of her SUV and to stay there and not to move.

52.    Plaintiff saw the Sheriff's deputies pointing to Noah Albers, one of the other campers, and they appeared to say something to him. Noah Albers is not Deaf. Noah Albers is hearing or Hard of Hearing. Noah Albers started to sign to Plaintiff in Pidgin Sign English (PSE). PSE is not ASL. Noah Albers apologetically signed to Plaintiff in PSE that he was not a certified interpreter. Plaintiff signed to Noah Albers, "I need an interpreter now." Plaintiff saw Noah Albers's mouth moving, apparently saying something to the deputies. Noah Albers then signed to Plaintiff that the Sheriff's deputies wanted Plaintiff to continue to sign with Noah Albers.

53.    The Sheriff's deputies questioned Plaintiff using Noah Albers as an interpreter. Through Noah Albers, Plaintiff told the Sheriff's deputies that some men had been throwing things such as a rock and beer cans at the campfire and hit Mr. Jimerson in his head. Plaintiff signed to Mr. Albers that Mr. Jimerson had not hurt Plaintiff and that Plaintiff did not want Mr. Jimerson arrested.

54.    Although Plaintiff followed the deputies' instructions and through Noah Albers told the deputies that Mr. Jimerson had not hurt her, the deputies stopped Plaintiff and told her, through Noah Albers, that they did not want to hear about the men at the campfire. Noah Albers interpreted to Plaintiff, "No, they are saying it's not about those other guys. It's about you, what happened to your nose?" Plaintiff said, "It does not hurt. I've got cold sores inside my nose. My nose just started bleeding when I was on my hands and knees looking for baby wipes." Plaintiff through Noah Albers signed that she asked for 911 to be called because those men had hurt Mr.

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

Jimerson, he was in pain, and he needed an ambulance. The deputies stopped Plaintiff from

talking. Noah Albers signed that the deputies had said, "You don't worry about those two guys!"

55.     The Sheriff's deputies, through Noah Albers, told Plaintiff that they decided to

take Mr. Jimerson to jail. Plaintiff signed, "For what? I didn't press charges on him. He's hurt.

The two guys caused this, not him."

56.     The Marion County Sheriff's deputies identified Plaintiff as an Oregon crime

victim. The deputies failed to provide Plaintiff with the rights granted to crime victims. Marion

County Sheriff's deputies did not notify Plaintiff of her rights as a perceived crime victim as

required by the Oregon Constitution. Oregon Const, Art I, § 42(1)(g); ORS 147.417(1).

57.      Noah Albers signed to Plaintiff that the Sheriff's deputies said they were

requiring Mr. Jimerson to have no contact with Plaintiff. Noah Albers signed that the deputies

said they would get a no-contact order and that Mr. Jimerson had to stay away from Plaintiff,

could not live with Plaintiff, and could not talk to Plaintiff. The Sheriff's deputies left with Mr.

Jimerson in their custody.

58.     Mr. Jimerson was charged with a crime. Plaintiff sought to be present at all

critical stages of the proceeding held in open court. Defendants Marion County, the Marion

County District Attorney's Office, and the state of Oregon had a duty to consistently notify

Plaintiff of each critical stage of the proceedings in open court as required by the Oregon

Constitution, Art I, § 42(1)(a); ORS 419C.273(1)(a).

59.     Defendant State of Oregon, Oregon Judicial Department, owed multiple duties to

Plaintiff which it failed to provide. This included Defendant State of Oregon Judicial Department

failing to assess Plaintiff's needs for accommodations and failing to accommodate Plaintiff by

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

providing qualified interpreters for her. Defendant State of Oregon violated federal law, Oregon statutory law, and the Oregon Constitution.

60.     The Oregon Judicial Department was required to appoint a qualified interpreter for Plaintiff and make available appropriate assistive communication devices where it is necessary to interpret the proceedings to Plaintiff, a person identified as a victim with a disability and who sought to exercise in open court rights granted by Article I, § 42 of the Oregon Constitution, including the right to be present at critical stages of the proceeding. ORS 45.285(3).

61.     The Oregon Judicial Department also failed to appoint a qualified interpreter when Plaintiff was present in Court to interpret the proceedings to Plaintiff who was asserting rights granted by Article 1, § 42 of the Oregon Constitution, including the right to be present at critical stages of the proceedings. Defendant State was required to appoint a qualified interpreter for Plaintiff because she is a non-English speaking victim and a victim with a disability pursuant to ORS 45.275(1)(b) and ORS45.285(1)(c).

62.      Defendant Marion County and its District Attorney had a duty to inform the Court as to whether Plaintiff had received notice of every hearing as required by ORS 147.510(2)(b) and failed to do so. Furthermore, if the victim was present at a critical stage of the proceeding, the prosecuting attorney had a duty to "inquire of the victim whether the victim intended to assert a right granted to the victim by section 42 or 43, Article I of the Oregon Constitution, and report the results of that inquiry to the court." ORS 147.510(5).

63.     Beginning September 5, 2023, and continuing, Plaintiff drove from White City, Oregon, to Salem, Oregon, to attend Mr. Jimerson's court appearances at the Marion County Courthouse in Salem, Oregon.

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

64.    On September 5, 2023, a District Attorney victim's advocate met with Plaintiff before the hearing in *State v. Jimerson*, Case No. 23CR43009. The victim's advocate used paper notes to communicate with Plaintiff and did not provide an ASL interpreter.

65.    On September 5, 2023, Mr. Jimerson appeared at the Marion County Courthouse in Case No. 23CR43009 before Judge Tiffany J. Underwood. Plaintiff attended the court appearance. Plaintiff entered the courtroom and saw that there was an interpreter for Mr. Jimerson, but there was no ASL interpreter for Plaintiff. Neither the Oregon Judicial Department nor the Marion County District Attorney provided an ASL interpreter for Plaintiff. Plaintiff had trouble following what was occurring because she could not see what Mr. Jimerson's ASL interpreter was signing. Plaintiff then moved to a different seat in the courtroom to try to see what Mr. Jimerson's interpreter was signing but had trouble understanding the proceedings because the interpreter's back was to her.

66.    During the September 5, 2023, court proceeding, Plaintiff signed to Mr. Jimerson's interpreter asking whether she could make a statement to the judge. Mr. Jimerson's ASL interpreter then signed to Plaintiff that the judge was going to allow Plaintiff to make a victim's statement through Mr. Jimerson's interpreter. Through Mr. Jimerson's interpreter, Plaintiff signed to the judge. The Court's official audio record records appear to demonstrate Plaintiff saying through the interpreter, "I'm requesting that *(unintelligible) * drop the charges on John-John. Because we did not have access to an interpreter and I asked a few times to get an interpreter, and never was able to tell the story. … ** had called ** had the police show up and hadn't been able to tell the story, and he is being charged for no reason. It was supposed to be for the other two men." Because Plaintiff cannot hear, she does not know what the interpreter said to the judge on September 3, 2023, and whether everything Plaintiff signed in the courtroom that

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

day was captured and accurately interpreted. Through Mr. Jimerson's interpreter, the judge told

Plaintiff that the victim's advocate would set up a meeting with the District Attorney. Mr.

Jimerson's ASL interpreter told Plaintiff that the judge signed a no-contact order prohibiting Mr.

Jimerson from having contact with Plaintiff. No one told Plaintiff that she could sign a petition to

have the no-contact order removed.

67.    On October 11, 2023, the District Attorney victim's advocate met with Plaintiff

before the hearing. The victim's advocate passed notes to communicate with her. The victim's

advocate did not tell Plaintiff that she could sign a petition to have the no-contact order removed.

68.    On October 11, 2023, Mr. Jimerson appeared at the Marion County Courthouse

Case No. 23CR43009 to plead not guilty before Judge Tiffany J. Underwood. Plaintiff appeared

for that court appearance. Plaintiff entered the courtroom and saw that there was an interpreter

for Mr. Jimerson but there was not an interpreter for Plaintiff. Neither the Oregon Judicial

Department nor the Marion County District Attorney provided an ASL interpreter for Plaintiff.

69.    On October 11, 2023, following the conclusion of the court hearing, the District

Attorney victim's advocate used Mr. Jimerson's interpreter to talk to Plaintiff. Plaintiff explained

to the victim's advocate that Mr. Jimerson had not injured her. Plaintiff asked the victim's

advocate to tell the District Attorney that the prosecution was a mistake and to drop the charges.

70.    On November 16, 2023, both Mr. Jimerson and Plaintiff appeared at the Marion

County courthouse for a status check before Judge Geyer. Neither the Oregon Judicial

Department nor the Marion County District Attorney provided an ASL interpreter for Plaintiff in

the courtroom.

71.    On November 16, 2023, following the court proceeding, a Deputy District

Attorney came out of the courtroom and motioned to Plaintiff to meet with him. The Marion

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

County District Attorney did not provide an ASL interpreter for Plaintiff. Plaintiff signed, "I'm Deaf" and gestured to her ears. The Deputy District Attorney nodded his head to indicate that he knew she is Deaf. The Deputy District Attorney opened his laptop computer and started typing messages to Plaintiff. Plaintiff had no choice but to tap out responses to his questions on her mobile telephone. Plaintiff asked the Deputy District Attorney if he had gotten her messages and seen a statement of what she told the Judge in Court on September 5, 2023. The Deputy District Attorney typed, "No. I am just the assistant." Plaintiff typed to the Deputy District Attorney that neither she nor Mr. Jimerson had an interpreter on September 3, 2023, that the charges against Mr. Jimerson were false, and that his family needed him home. The Deputy District Attorney wrote that he would let the District Attorney know and figure things out. The Deputy District Attorney wrote that he would contact Plaintiff soon. Plaintiff typed her email address, her text telephone number, and typed her relay service telephone number on the Deputy District Attorney's laptop computer so he could contact her. The Assistant District Attorney did not tell Plaintiff that she could sign a petition to have the no-contact order removed.

72.    On November 17, 2023, the Marion County District Attorney's Victims' Assistance Division sent Plaintiff a letter. This letter notified Plaintiff that a hearing had been scheduled for December 6, 2023, at 11:00 a.m. before Judge Geyer. In that letter, the Marion County District Attorney notified Plaintiff that she had the right to be present. Plaintiff notified the District Attorney's Victims' Assistance office that she wanted to attend the hearing and would need an ASL interpreter.

73.    At the next court appearance in December 2023, Mr. Jimmerson was arraigned on new charges before Judge Courtland Geyer in Case No. 23CR59241. Both Plaintiff and Mr. Jimerson came to the Marion County Courthouse. There was an interpreter for Mr. Jimerson.

PAGE 18 – COMPLAINT AND DEMAND FOR JURY TRIAL

Neither the Oregon Judicial Department nor the Marion County District Attorney provided an interpreter for Plaintiff.

74.     After the December 2023 court appearance, Plaintiff tried to talk to the Deputy District Attorney who was in the courtroom that day. There was no interpreter present. The Deputy District Attorney brushed her off and quickly left.

75.     On January 4, 2024, Plaintiff appeared at a status check hearing in Case No. 23CR59241 at the Marion County courthouse. There was not an ASL interpreter for either Mr. Jimerson or Plaintiff in the courtroom.

76.     On January 4, 2024, following the court appearance, a Deputy District Attorney came out to talk to Plaintiff but did not provide her with an ASL interpreter. The Deputy District Attorney held out his notebook computer for Plaintiff to type on. Plaintiff wrote a note asking the Deputy District Attorney why the District Attorney had not contacted her. Plaintiff wrote that she tried to call the District Attorney many times. The Deputy District Attorney typed that due to Plaintiff being deaf, they had communication barriers. Plaintiff typed that she could communicate by email and take telephone calls. The Deputy District Attorney said he would let the District Attorney know. The Assistant District Attorney did not tell Plaintiff that she could sign a petition to have the no-contact order removed.

77.     On March 7, 2024, Plaintiff attended a pretrial conference hearing before Judge Geyer in *State v. Jimerson*, Case No. 23CR59241. Neither the Oregon Judicial Department nor the Marion County District Attorney provided an ASL interpreter for her. To Plaintiff's best knowledge, there was also not an interpreter for Mr. Jimerson.

78.     On March 14, 2024, Plaintiff traveled to Salem for the scheduled criminal trial in *State v. Jimerson*. When Plaintiff entered Judge Geyer's courtroom, there was not an interpreter

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

for Plaintiff. There was an interpreter for Mr. Jimerson. The scheduled jury trial was not held that day.

79.     On March 14, 2014, after Plaintiff walked out of Judge Geyer's courtroom, an interpreter that the Court provided for Mr. Jimerson signed to Plaintiff through ASL that the Deputy District Attorney wanted to talk to her. Speaking to Plaintiff through the interpreter, the Deputy District Attorney requested that Plaintiff meet with him. Plaintiff replied through Jimerson's interpreter that she had hired a lawyer and was not supposed to speak to the District Attorney's office. The Deputy District Attorney asked Plaintiff to meet with him anyway to discuss the case before the next trial date. The Deputy District Attorney suggested several dates for a future meeting. The Deputy District Attorney asked Plaintiff if she would meet with him on March 26, 2024, between 1:00 and 4:00 p.m. The Deputy District Attorney also told Plaintiff that he would call Plaintiff before their March 26, 2024, meeting. The Assistant District Attorney did not tell Plaintiff that she could sign a petition to have the no-contact order removed.

80.     After the March 14, 2024, court appearance, Plaintiff drove back home to White City. She received a letter, dated March 13, 2024, from the Marion County District Attorney directing her to appear for a trial in *State v. Jimerson* on March 14, 2024. There was not a trial on March 14, 2024, although Plaintiff appeared for a court appearance in that case and was not provided with an ASL interpreter.

81.     On June 27, 2024, Plaintiff appeared for a scheduled court appearance in *State v. Jimerson* in advance of the new trial dates of July 15 and 16, 2024. Neither the Oregon Judicial Department nor the Marion County District Attorney provided an interpreter for Plaintiff.

82.     On or about July 10, 2024, Plaintiff signed a petition to have the no-contact order removed.

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL

83.     On July 11, 2024, Plaintiff appeared at the Marion County Courthouse for a hearing in *State v. Jimerson.* Neither the Oregon Judicial Department nor the Marion County District Attorney provided an interpreter for Plaintiff. A hearing was held, and the Court removed the no-contact order. Plaintiff was reunited with Mr. Jimerson after she and their child were wrongfully separated from Mr. Jimerson for almost ten months.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (Americans with Disabilities Act – Title II: 42 USC §12131 et seq.)

### Defendants Marion County and State of Oregon

84.     Plaintiff re-alleges all relevant prior paragraphs.

85.     At all times material, Defendants County and State were and are each a public entity for the purpose of, and subject to, the Americans with Disabilities Act (ADA). Defendants each provide public services.

86.     Plaintiff has physical impairments that substantially limit one or more of her major life activities. Plaintiff is hearing impaired and has been deaf since birth. Plaintiff is a qualified individual with a disability under the ADA.

87.     At all relevant times, Defendants County and State were aware of Plaintiff's physical disabilities, namely that Plaintiff was deaf.

88.     Defendants County and State discriminated against Plaintiff by excluding her from or denying her an equally effective opportunity to participate in or receive the benefits of Defendants' services, programs, or activities.

89.     Defendants County and State denied Plaintiff the benefits of Defendants' services and programs by failing to comply with 28 CFR § 35.107 and 28 CFR § 35.106, which require

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

public entities to designate and provide notice of a responsible employee to coordinate efforts to comply with and carryout out responsibilities of Title II of the ADA.

90.     Defendants County and State denied Plaintiff the benefits of Defendants' services and programs by failing to provide adequate communication services through a qualified American Sign Language interpreter.

91.     Defendants County and State knew that Plaintiff requested an interpreter as an auxiliary aid for communication, disregarded Plaintiff's request without making an effort to determine if it was possible to accommodate her request, and failed to provide adequate auxiliary aid in lieu of a qualified interpreter during multiple separate events as alleged above.

92.     Defendants County and State's actions constitute discrimination under Title II of the ADA.

93.     As a result of Defendant County and State's unlawful actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of her personal dignity and right to be free from discrimination or interference with her statutory rights.

## SECOND CLAIM FOR RELIEF

## (§ 504 of the Rehabilitation Act of 1973)

## Defendants Marion County and State of Oregon

94.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

95.     Plaintiff is a qualified individual with a disability or handicap under the Rehabilitation Act.

96.     Plaintiff was otherwise qualified to receive the benefit of the services made available to clients or patients of Defendant.

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

97.    At all times material, Defendant was and is a recipient of federal financial assistance for its programs and activities.

98.    Defendant's actions and omissions, as described above, violated Plaintiff's rights under the Rehabilitation Act by excluding her or denying her the benefits of Defendant's services solely because of her disability.

99.    Defendants' conduct showed deliberate indifference to Plaintiff's rights.

100.    Defendant sustained emotional distress and damages due to Defendants' violation of the Rehabilitation Act.

101.    Pursuant to § 505 of the Rehabilitation Act, Plaintiff is entitled to compensation for her damages and an award of attorney fees and costs.

## THIRD CLAIM FOR RELIEF

### (42 USC § 1983)

### Defendant Marion County

102.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

103.    Defendant Marion County's Sheriff's deputies deprived Plaintiff of right to be free from unreasonable search and seizure guaranteed by the Fourth Amendment of the United States Constitution. As set forth in paragraph 50 of the Complaint, Sheriff's deputies went to Plaintiff's vehicle, an SUV, and opened the vehicle doors of Plaintiff's SUV. The deputies did not have a warrant to search Plaintiff's vehicle and they did not have Plaintiff's consent to enter her vehicle.

104.    As a result of Defendant's violation of Plaintiff's Constitutional rights, Plaintiff is entitled to non-economic damages against Defendant Marion County in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for Plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

PAGE 23 – COMPLAINT AND DEMAND FOR JURY TRIAL

## FOURTH CLAIM FOR RELIEF

## (ORS 659A.142 and ORS 659A.143)

## Defendants Marion County and State of Oregon

105.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

106.    Defendant Marion County, its Sheriff's Office and its District Attorneys Office as well as Defendant State of Oregon and its Oregon Judicial Department are "place of public accommodation" as that term is defined in ORS 659A.142.

107.    Plaintiff is a "disabled person" as defined at ORS 659A.104(1).

108.    At all relevant times, Defendants were aware of Plaintiff's disabilities.

109.    Defendants discriminated against Plaintiff as alleged above.

110.    Plaintiff is entitled to injunctive relief, including, but not limited to, an order prohibiting Defendants continued discrimination against people with disabilities and an order mandating full compliance with ORS 659A.142.

111.    Plaintiff is entitled to a declaration that the Defendants violated ORS 659A.142.

112.    Pursuant to ORS 659A.885 and ORS 20.107, Plaintiff is entitled to an award of attorney's fees, costs, and disbursements.

## FIFTH CLAIM FOR RELIEF

## (False Imprisonment)

## Defendant Marion County

113.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

114.    Defendant Marion County intentionally restricted Plaintiff's freedom of movement without her consent by requiring Plaintiff to stand to one side of her car and not move.

PAGE 24 – COMPLAINT AND DEMAND FOR JURY TRIAL

115.    Defendant Marion County restricted Plaintiff against her will without legal right or justification.

116.    Plaintiff suffered emotional distress and damages as a result of Defendant's conduct.

## SIXTH CLAIM FOR RELIEF

### (Crime Victim's Rights)

### Defendants State of Oregon and Marion County

117.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

118.    At all relevant times, Defendant was aware of Plaintiff's disabilities.

119.    Defendant discriminated against Plaintiff as alleged above.

120.    Plaintiff is entitled to injunctive relief, including, but not limited to, an order prohibiting Defendants Marion County and State of Oregon from continuing to discriminate against people with disabilities and an order mandating full compliance with ORS 659A.142.

121.    Plaintiff is entitled to a declaration that the Defendant violated ORS 659A.142.

122.    Pursuant to ORS 659A.885 and ORS 20.107, Plaintiff is entitled to an award of attorney's fees, costs, and disbursements.

## VII. PRAYER FOR RELIEF

Plaintiff seeks judgment against Defendant and requests that this Court enter an Order as follows:

A.    Accepting jurisdiction of this case and declaring that Defendant violated Title III of the ADA;

B.    Accepting jurisdiction of this case and declaring that Defendant violated § 504 of the Rehabilitation Act of 1973;

PAGE 25 – COMPLAINT AND DEMAND FOR JURY TRIAL

C.      Injunctive and other equitable relief as the Court deems appropriate, including, but not limited to, an Order requiring Defendant to provide qualified American Sign Language interpreters and auxiliary aids, to establish policies to accommodate Deaf people, and requiring Defendant to appoint and train ADA coordinators and to make the existence of the coordinator or coordinators, and a process to follow to contact the coordinator, known to people with Disabilities;

D.      To require Defendant to establish a policy and procedure for ensuring Deaf persons in custody will have access to ASL interpreters while receiving services and scheduling appointments;

E.      A sum which will fully compensate Plaintiff for her noneconomic damages in a sum that is just as determined by a jury;

F.      A sum which will fully compensate Plaintiff for her economic damages in a sum that is just as determined by a jury;

G.      Plaintiff's costs and disbursements incurred herein;

H.      Plaintiff's attorneys' fees; and

I.      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED: August 30, 2024

LAW OFFICES OF DANIEL SNYDER

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 78385
dansnyder@lawofficeofdanielsnyder.com
Paul Bastian, OSB No. 062706
paul@lawofficeofdanielsnyder.com
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205

PAGE 26 – COMPLAINT AND DEMAND FOR JURY TRIAL

Telephone: (503) 241-3617
Facsimile: (503) 241-2249
                    Attorneys for Plaintiff

PAGE 27 – COMPLAINT AND DEMAND FOR JURY TRIAL