IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SHEILA GUND,

        Plaintiff,

v.

MARION COUNTY, STAYTON FIRE DISTRICT, SANTIAM MEMORIAL HOSPITAL dba SANTIAM HOSPITAL & CLINICS, and STATE OF OREGON,

        Defendants.

Case No. 6:24-cv-01448-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Sheila Gund brings this action against Defendants Marion County, Stayton Fire District, Santiam Memorial Hospital, and the State of Oregon. Second Am. Compl., ECF No. 32. Before the Court is Defendant Santiam Memorial Hospital's Motion to Dismiss for failure to state a claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot., ECF No. 50. Because Plaintiff has not made sufficient allegations to establish standing, Defendant's Motion is GRANTED.

**BACKGROUND**

The Second Amended Complaint alleges as follows. Plaintiff Sheila Gund, a resident of White City, Jackson County, Oregon, was born deaf and is "culturally d/Deaf."[1] Second Am. Compl. ¶¶ 20–21. She does not speak English; American Sign Language ("ASL") is her primary

---

[1] "Deaf" refers to those who identify culturally and socially with the Deaf community, whereas "deaf" refers to those who are hard of hearing or are medically unable to hear.

1

language. *Id.* ¶¶ 23–24. Plaintiff "requires the assistance of a qualified ASL interpreter to communicate effectively . . . with hearing persons who do not know ASL." *Id.* ¶ 25. Plaintiff's children are of hearing, but ASL is their primary language, and English is their second language. *Id.* ¶ 26. Plaintiff's children are not qualified ASL language interpreters. *Id.* Plaintiff's domestic partner and father of one of her children, John-John Jimerson, is also Deaf. *Id.* ¶¶ 3, 11, 51.

In August 2023, Plaintiff and her family arrived at Camp Taloali for the World Deaf Timberfest. Second Am. Compl. ¶ 37. "Camp Taloali is a summer camp in Marion County for Deaf children and the children of Deaf parents who use ASL." *Id.* ¶ 36. During the event, an altercation broke out and unnamed individuals threw a rock and full cans of beer at Mr. Jimerson. *Id.* ¶¶ 38–39. The assailants managed to strike Mr. Jimerson in the head twice, and Plaintiff instructed her son to call emergency services. *Id.* ¶¶ 39, 44. Defendant Santiam Memorial Hospital's emergency responders arrived at the scene to provide primary care. *Id.* ¶ 45. Despite recognizing Plaintiff as deaf, the medics failed to furnish a qualified ASL interpreter, refused to provide paper and pen for Plaintiff to communicate, and used Plaintiff's teenage children as interpreters—even after Plaintiff had explicitly asked the medics to stop using her children as interpreters and to provide an ASL interpreter. *Id.* ¶¶ 47–48.

Defendant Santiam Memorial Hospital's failure to provide accommodations, combined with other Defendants' failures, caused Defendants to misunderstand the nature of the 911 call. Second Am. Compl. ¶ 11. Believing that Plaintiff was the victim of a crime committed by Mr. Jimerson, Marion County Sheriff's deputies pulled a sleeping Mr. Jimerson out of Plaintiff's vehicle and arrested him. *Id.* ¶¶ 51, 55, 57. The deputies took Mr. Jimerson to jail and required him to cease contact with Plaintiff. *Id.* ¶ 58. Mr. Jimerson was charged with a crime, and criminal proceedings were initiated against him. *Id.* ¶¶ 59, 64. Proceedings continued well into the

following year, and the no-contact order was not removed until July 11, 2024. *Id.* ¶ 87. Mr. Jimerson was separated from Plaintiff and their child for almost ten months. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, courts assess a plaintiff's claims with a two-step approach. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court must strike out any legal conclusions, including "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* Second, the Court must determine whether the remaining factual allegations state a plausible claim for relief. *Id.* This is a context-specific task, requiring the Court "to draw on its judicial experience and common sense." *Id.* at 679. To establish plausibility, the well-pleaded facts must allow for "the court to infer more than the mere possibility of misconduct"—they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678–79. Additionally, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Finally, besides demanding plausibility, the pleading standards also require the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## DISCUSSION

Defendant Santiam Memorial Hospital moves to dismiss Plaintiff's claim under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

3

accommodation." 42 U.S.C. § 12182(a). The statute defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

Defendant argues Plaintiff lacks standing for her Title III claim.[2] Def.'s Mot. 5. To establish standing, a plaintiff seeking injunctive relief must demonstrate an "injury in fact, causation, and a 'real and immediate threat of repeated injury.'" *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Here, Defendant only disputes whether Plaintiff can show threat of repeated injury. Def.'s Mot. 5. In the ADA context, a plaintiff establishes such a threat if "[s]he intends to return to a noncompliant place of public accommodation where [s]he will likely suffer repeated injury." *Chapman v. Pier 1 Imports Inc.*, 631 F.3d 939, 948 (9th Cir. 2011). "Alternatively, a plaintiff who 'has visited a public accommodation on a prior occasion' demonstrates a real and immediate threat if [s]he 'is currently deterred from visiting that accommodation by accessibility barriers.'" *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008)). A past wrong by itself is insufficient to establish an immediate threat of injury but may be evidence that a real and immediate threat of future injury exists. *Chapman*, 631 F.3d at 948. Although courts take a broad view of standing in ADA cases,[3] Plaintiff must adequately plead "each element" of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the

---

[2] Defendant also contends, correctly, that Plaintiff cannot seek monetary damages under Title III. Def.'s Mot. 5. Any claims for damages under Title III are dismissed and the Court considers only Plaintiff's standing for injunctive relief.
[3] "The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran*, 524 F.3d at 1039 (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

4

defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotations and alterations omitted) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Plaintiff has not alleged sufficient facts to allow this Court to reasonably infer that Plaintiff is currently deterred from seeking out Defendant's medical services to satisfy the threat of injury requirement for standing. In *Doran*, the plaintiff, who used a wheelchair, was found to have been deterred from visiting a 7-Eleven store 550 miles away from him because the store lacked van-accessible parking, its wheelchair ramp that was too steep, its aisles were too narrow to accommodate him, and the Plaintiff testified in a deposition that he would return to the store but only once it was fixed. *Doran*, 524 F.3d at 1038, 1040–41. To be sure, Defendant Santiam Memorial Hospital's alleged failure to provide accommodations played a part in Defendants' collective misunderstanding of the situation at Camp Taloali. Viewing the facts in light most favorable to Plaintiff, had Defendant provided a qualified ASL interpreter, or even pen and paper, Plaintiff could have explained the purpose of the 911 call, potentially reducing the risk of her alleged injuries arising from the arrest of Mr. Jimerson by Sheriff's deputies. But these allegations do not plausibly link Defendant's failure to accommodate Plaintiff to Plaintiff being deterred from seeking Defendant's medical services—the public accommodation at issue in Plaintiff's Title III claim against Defendant is the Defendant. *See Chapman*, 631 F.3d at 946; *Doran*, 524 F.3d at 1041 (stating injury in fact is established by allegations plaintiff "visited a public accommodation on a prior occasion and is currently deterred from visiting *that* accommodation by accessibility barriers" (emphasis added)). Indeed, Plaintiff instead argues she is deterred from returning to "World Deaf Timberfest at Camp Taloali, or areas of public accommodation in the vicinity of" Defendant. Pl.'s Resp. 6–7, ECF No. 59. Defendant emphasizes that Plaintiff fails to allege (1) an

intention to interact with Defendant's services in the future, (2) an intention to visit the area, (3) that she lives in the area, or (4) a medical need increasing the likelihood that she will need Defendant's services in the future. Def.'s Mot. 6. Failure to make such allegations does not necessarily defeat standing in all cases, but it must here. *See Doran*, 524 F.3d at 1039–40. Because Plaintiff has not alleged facts that support a plausible inference that she is presently deterred from seeking out Defendant's services, Plaintiff lacks standing for her Title III claim against Defendant.

## CONCLUSION

Defendant's Motion to Dismiss, ECF No. 50, is GRANTED.

IT IS SO ORDERED.

DATED this 16th day of September 2025.

                                                    _s/Michael J. McShane_____
                                                          Michael J. McShane
                                                       United States District Judge