DAN RAYFIELD
Attorney General
MARC ABRAMS, #890149
Assistant Attorney-in-Charge
JILL SCHNEIDER, #001619
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  marc.abrams@doj.oregon.gov
            jill.schneider@doj.oregon.gov

*Attorneys for Defendant State of Oregon Judicial Department*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHEILA GUND,<br><br>    Plaintiff,<br><br>    v.<br><br>MARION COUNTY, STAYTON FIRE DEPARTMENT, SANTIAM MEMORIAL HOSPITAL dba SANTIAM HOSPITAL & CLINICS, and STATE OF OREGON,<br><br>    Defendants. | Case No.  6:24-cv-1448-MC |

**MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

LOCAL RULE 7-1 CERTIFICATION ................................................................................ 1

MOTION ............................................................................................................................. 1

INTRODUCTION .............................................................................................................. 2

FACTS ................................................................................................................................ 4

LEGAL STANDARDS ..................................................................................................... 12

ARGUMENT .................................................................................................................... 13

    I.    A plaintiff is not entitled to only her preferred accommodation. .................................... 13

    II.    Neither the ADA nor the Rehab Act require separate interpreters. ................................. 14

    III.    There is no evidence of intent, thus barring an ADA claim. ........................................... 16

    IV.    OJD does not receive federal funds such that it is subject to the Rehab Act. ................... 18

    V.    In any event, the requests for injunctive relief should be dismissed. ............................... 18

CONCLUSION .................................................................................................................. 19

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 12

*Chapman v. Pier I Imports, Inc.*,
631 F.3d 939 (9th Cir. 2014) ................................................................................ 19

*Cstoras v. Paradise High School*,
12 F.4th 960 (9th Cir. 2021) ........................................................................... 14, 16

*Doran v. 7-Eleven, Inc.*,
524 F.3d 1034 (9th Cir. 2008) ............................................................................. 19

*Duvall v. County of Kitsap*,
260 F. 3rd 1124 (9th Cir. 2001) ................................................................. 14, 16, 17

*E.E.O.C. v. Yellow Freight Sys. Inc.*,
253 F.3d 943 (7th Cir.2001) ................................................................................. 13

*Emeldi v. Univ. of Or.*,
673 F.3d 1218 (9th Cir. 2012) ............................................................................. 12

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
753 F.3d 862 (9th Cir. 2014) ............................................................................... 19

*Fink v. N.Y.C. Dep't of Personnel*,
53 F.3d 565 (2d Cir.1995) .................................................................................... 13

*Fortyune v. Am. Multi-Cinema, Inc.*
364 F.3d 1075 (9th Cir. 2004) ............................................................................. 19

*Hummel v. Maricopa Cnty. Adult Prob. Dep't*,
2021 WL 3787544 (D. Ariz. Aug. 26, 2021),
*aff'd,* 2024 WL 1612221 (9th Cir. Apr. 15, 2024) ............................................. 13

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................................... 12

*Loye v. County of* Dakota,
647 F. Supp. 2d 1081 (D. Minn 2009),
*aff'd,* 625 F.3d 494 (8th Cir. 2010) ..................................................................... 16

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................. 12

*McElwee v. Cnty. of Orange*,
700 F.3d 635 (2d Cir. 2012) ................................................................................ 13

*O'Shea v. Littleton*,
414 U.S. 488, 94 S. Ct. 669 (1974)........................................................................ 19

*Powell v. National Bd. of Medical Examiners*,
364 F.3d 79 (2d Cir. 2004).................................................................................... 13

*Randolph v. Rodgers*,
170 f.3d 850 (8th Cir. 1999) ................................................................................. 13

*Schuler v. Chronicle Broadcasting Co.*,
793 F.2d 1010 (9th Cir. 1986) .............................................................................. 12

*Steckl v. Motorola, Inc.*,
703 F.2d 392 (9th Cir. 1983) ................................................................................ 12

*United Steelworkers of America v. Phelps Dodge Corp.*,
865 F.2d 1539 (9th Cir.),
*cert. denied*, 493 U.S. 809 (1989) ....................................................................... 12

*Waller v. City of Danville*,
556 F.3d 171 (4th Cir. 2009) ................................................................................ 15

*Weinreich v. Los Angeles County Metropolitan Transportation Authority*,
114 F.3d 976 (9th Cir. 1997) ................................................................................ 14

*Zivkovic v. S. California Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) .............................................................................. 13

**Statutes**

ORS 45.288.............................................................................................................. 3

ORS 45.291.............................................................................................................. 3

ORS 659A.142 ......................................................................................................... 1

**United States Code**

29 U.S.C. § 794...................................................................................................... 18

**Rules and Regulations**

28 C.F.R. § 35.130 ................................................................................................. 13

28 C.F.R. § 41.53 ................................................................................................... 13

Fed. R. Civ. P. 56............................................................................................... 1, 12

Local Rule 7-1......................................................................................................... 1

UTCR 7.060................................................................................................... 8, 19, 20

Page iii -  MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

**LOCAL RULE 7-1 CERTIFICATION**

Counsel for defendants certifies that, in accordance with LR 7-1, counsel Marc Abrams conferred with counsel for plaintiff Paul Bastian, and the parties agreed they could not resolve this matter.  Accordingly, this motion requires determination by this Court.

**MOTION**

Pursuant to Fed. R. Civ. P. 56, defendant Oregon Judicial Department moves that this Court grant summary judgment and dismiss with prejudice the claims for relief against them (the First and Second Claims for Relief) in the Second Amended Complaint ("SAC").

In the Second Amended Complaint, Gund brought seven claims against Marion County ("Marion"), the Stayton Fire Department ("Stayton"), Santiam Memorial Hospital ("Santiam") and the Oregon Judicial Department ("OJD").  Stayton and Santiam have subsequently been dismissed from this action.  ECF Nos. 63, 66.  The First Claim for Relief alleges a violation of Title II of the Americans with Disabilities Act ("ADA") as against Marion and OJD (Stayton having been dismissed) for failing to provide "adequate communications services."  Specifically, as to OJD, plaintiff contends that Title II of the ADA requires OJD to have on hand American Sign Language ("ASL") interpreters for *each* person involved in a court proceeding, not just one. The Second Claim for Relief asserts that Marion and OJD failed to provide Gund services solely on the basis of her disability, thus violating Section 504 of the Rehabilitation Act of 1973 ("Rehab Act").  OJD is not named in the Third Claim for Relief for violation of search and seizure freedoms, which is brought only as against Marion.  The Fourth Claim for Relief is essentially the same as the First except it is brought pursuant to state statute, specifically ORS 659A.142 and is brought against Marion, this Court having previously dismissed the claim as to OJD.  ECF. No. 27.  The Fifth Claim for Relief is against Marion only and is for false imprisonment.  The Sixth Claim for Relief contends the defendants Marion and OJD have

Page 1 -    MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

violated the State's crime victims' rights laws but has been dismissed as to OJD.  ECF. No. 27.

Finally, the seventh claim was brought only against Santiam under Title III of the ADA but

Santiam now having been dismissed, this claim is no longer part of the case.

As to the First Claim for Relief, plaintiff cannot show either that the law requires

provision of two interpreters or that the facts in this action show that two would have been

needed at any of the nine court events at issue.  In addition, it is incumbent on plaintiff to prove

"deliberate indifference," and she cannot make that showing.  As to the Second Claim for Relief,

both of these issues also apply and, in addition, OJD is not subject to the Rehab Act as the

judicial function does not receive federal funding.  In addition, should these claims survive this

motion, the requested injunctive relief should be dismissed for failure to show the possibility of

repeated injury.  There is no issue of material fact and defendants are entitled to judgment as a

matter of law.  The motion is supported by the following *Memorandum of Law,* and by the

*Declarations of Marc Abrams, Courtland Geyer, Linda Hakari, Yvette Tamamoto, Kimberly*

*Taylor, Matthew Tracey and Tiffany Underwood.*

## INTRODUCTION

The Oregon Judicial Department is committed to court access.  Indeed, it goes to great

lengths to achieve communication with people from different cultures, speaking different

languages, and also with those with disabilities.  The commitment, while constant, is not without

unique challenges: there are only eight certified ASL interpreters for the entire Oregon judicial

system.[1]  Tamamoto Dec. ¶ 4.  With one exception, they are not employees of OJD, but

independent contractors.  *Id.*  Logically, on any given day some will be contracted for by other

---

[1] Gund does not know how many ASL interpreters are available to work in the Oregon court system.  Deposition of Sheila Gund, taken October 23-24, 2025 ("Gund dep.") at 21:15-18. Abrams Dec. Exh. A.

Page 2 -    MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

than OJD, some will be on OJD business in other courtrooms or other counties. Tamamoto Dec. ¶ 5. Some may be sick or on vacation. *Id.* Certified ASL interpreters, accordingly, are a significantly limited resource. Moreover, pursuant to ORS 45.288, the courts are *required* to use only "qualified interpreters who have been certified under ORS 45.291," and that statute, in turn, sets out the requirements for certification.

Plaintiff Sheila Gund was a recipient of continuing efforts to improve court access. Gund was not a party to the two criminal lawsuits underlying this action. She was the romantic partner of the accused, John John Jimerson, who was charged with assaulting Gund on the night of September 3, 2023. Both Jimerson and Gund are deaf.

Despite not being a party to the criminal lawsuits, Gund received accommodations in those lawsuits. There was, it is undisputed, an American Sign Language ("ASL") interpreter in each and every hearing Gund actually attended. But Gund, who other than observing has no participatory role in most of these hearings, contends the only way to accommodate her was to provide her with her own interpreter. OJD tried, but it was not always possible. In one hearing, Gund appeared only on that day with no prior notice. On another, the second interpreter was scheduled but did not show for unknown reasons. On yet another, there *were* two interpreters. And, twice, the judge in the hearing allowed her to sit at counsel's table to gain a clear line of sight of the interpreter.

OJD did what it had to, what it could. But with only eight court-certified interpreters for the entire judicial system serving all 36 of Oregon's counties, complete coverage is not always possible. Alternatives needed to be provided, and they were. Nowhere in the record is there any evidence of deliberate indifference to Gund's needs. Indeed, the record shows that OJD and its personnel took the steps needed to comply with the ADA and the Rehab Act.

Page 3 -  MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

As set forth below, there is no issue of material fact.  Summary judgment dismissing OJD from this action should issue.

## FACTS

The most important facts in this matter can be displayed graphically:[2]

| DATE | PROCEEDING | GUND PRESENT | PLAINTIFF MORE THAN OBSERVER | INTERPRETER PRESENT | NOTES |
|---|---|---|---|---|---|
| 9/5/2023 | Jimerson Arraignment | Yes | Yes.  Addressed the Court to say she was not victim. Gund dep. 23:1-6 | Rich Hall | Plaintiff only requested interpreter same afternoon of hearing. Gund dep. 18:19-19:1, 20:1-18, 21:4-7 |
| 10/11/2023 | Plea hearing | Yes | No,  Gund dep.39:1-3. | Two: Damon Thayer and Lisa Crawford for Gund. Gund dep. 38:6-8 | No specific request for this hearing made. Gund dep. 39:13-40:7 |
| 11/16/2023 | Status conference | No. Gund dep.41:1-8 | No.  Gund dep. 41:1-8 | Not needed | Gund not in room.  Gund dep. 41:1-8 |
| 12/13/2023 | Arraignment/M2D failure to timely indict | Yes | No.  Gund dep. 43:22-23 | Rich Hall | No specific request for this hearing made. Gund dep. 39:13-40:7 |
| 1/4/2024 | Status conference | No. Gund dep. 46:3-5 | No. Gund dep. 46:3-5 | Not needed | Gund not in room.  Gund dep. 46:3-5 |
| 3/7/2024 | Pre-trial conference | No. Gund dep. 47:5-7 | No. Gund dep. 47:5-7 | Not needed | Gund not in room. Gund dep. 47:5-7 |
| 3/14/2024 | Motion hearing | Yes | No. Court moved Gund to sit with counsel. Gund dep. 47:8-48-8 | Rich Hall | No specific request for this hearing made. Gund dep. 39:13-40:7 |
| 6/27/2024 | Status or pre-trial | No.  Gund | No. Gund dep. | Not needed | Gund not in |

---

[2] Additional citation for the information in the table will be found in the expository text which follows.

Page 4 -   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

| DATE | PROCEEDING | GUND PRESENT | PLAINTIFF MORE THAN OBSERVER | INTERPRETER PRESENT | NOTES |
|---|---|---|---|---|---|
|  | conference | dep. 48:17-19 | 48:17-19 |  | room. Gund dep. 48:17-19 |
| 7/11/2024 | Hearing re contact order | Yes | Yes. Addressed the Court, was moved to sit with counsel. Gund dep. 52:15-18 | Damon Thayer | No specific request for this hearing made by Gund, Gund dep. 39:13-40:7. Court requested two interpreters but only one available |

Sheila Gund is deaf. Gund dep. 10:19-21. She communicates primarily using American Sign Language (ASL"). Gund dep. 11:20-22.

During Labor Day weekend, 2023, Sheila Gund, John John Jimerson and Gund's children were camping at Camp Taloali outside of Stayton, Oregon. Gund dep. at 18:1-6; SAC ¶ 37. Jimerson was Gund's romantic partner. Gund dep. 5:21-25. Jimerson is also deaf. *E.g.,* SAC ¶ 47. Gund communicates primarily through American Sign Language ("ASL"). Gund dep. 11:20-22. They were staying with a group of other deaf individuals. SAC ¶¶ 36 37.

On the night of September 3, 2023, the day before Labor Day, there was an altercation in which members of the group threw rocks and bottles at Jimerson. Gund dep. 18:1-6, 93:19-94:2. However, others reported that Jimerson was hitting Gund, and that was what was told to a 911 operator by one of Gund's children, Zethyn, who reported that "my step dad hit my mom in the mouth, like punched her." Gund dep. 97:12-13; Transcription of 911 call Sept. 3, 2023, Abrams Dec. Exh. C. The details of the events are not relevant to the claims against OJD save for the facts that Jimerson was arrested and that, ultimately, the Marion County District Attorney's Office determined that Gund was a "crime victim." Abrams Dec. Exh. D. Gund, however,

Page 5 -   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

denies that she was the victim of any crime or that one even occurred.[3]  Gund dep. 16:9-16, Exh. 201 at 7, 25.  Gund never informed the court that she had suffered an alleged violation of her crime victim's rights.  Gund dep. 192:2-5.  She at all times opposed the "no contact" order entered against Jimerson.  Gund dep. 17:2-14.

Jimerson was arraigned on September 5, 2023.  The arraignment occurred the first workday after the incident, Monday September 4, 2023 being Labor Day.  The assigned judge for the arraignment was *pro tem* Judge Tiffany Underwood.  Underwood Dec. ¶ 2.  Judge Underwood's courtroom was situated in the Marion County Courthouse Annex.  4000 Aumsville Highway SE.  Gund dep. 20:25-21:3. Underwood Dec. ¶ 1.

Gund appeared for this first hearing.  Other than making a call to a victim's assistance hotline, which is not operated by OJD,[4] Gund dep. 158:7-9, she gave no notice she would be coming until actually showing up at the courthouse and demanding an interpreter from the front desk at 12:30 p.m., mere hours before the 3:00 p.m. arraignment.[5]  Gund dep. 18:19-19:1, 20:1-18, 21:4-7.

Gund had no role in the September 5, 2023 proceeding, but merely showed up to see what was happening.  Gund dep. 22:5-7.  She did not even know what the proceeding was about.  Gund dep. 22:2-4.  Neither the lawyers in the courtroom nor the judge asked Gund to participate in any manner.  Gund dep. 22:19-25.  Gund, however, did communicate through the ASL interpreter who was present in the courtroom that she was not a victim and that she wanted her

---

[3] Accordingly, asking to avail herself of the legal entitlements of a crime victim while denying she is one is, at the least, curious.

[4] Indeed, Gund does not even know that the Marion County District Attorney and the OJD are not one and the same entity.  Gund dep. 30:25-31:4.

[5] She failed to provide advance notice even though she knew to do so from her 2018 divorce.  Gund dep.  7:4-9, 9:12-20.

Page 6 -    MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

own ASL interpreter.  Gund dep. 23:1-11.  She was able to utilize the interpreter who was present.  Gund dep. 23:12-14.

After the September 5, 2023 arraignment, Gund came to the Marion County Courthouse a number of times to attend proceedings relating to Jimerson, regardless of whether they were open to her or to any member of the public, as set forth below.  Gund is a resident of Jackson County and travelled from there to Marion County each time.  Gund dep. 20:25-21:3, 37:10-17, 40:16-19, 42:21-24, 46:3-5, 47:5-23, 48:12-16, 50:13-51:4.

There were nine scheduled events relevant to this case:

On September 5, 2023, Mr. Jimerson was arraigned and Gund attended.  Gund dep. 22:19-22; Underwood Dec. ¶ 3.  There was an ASL interpreter, Rich Hall, in the courtroom.  Gund dep. 23:9-11; Underwood Dec. ¶ 3.  Because it was a holiday weekend, OJD was closed and Gund did not inform OJD in advance she would be attending.  Gund dep. 20:1-7.  She did not tell OJD in advance of going to the Help Desk on September 5th that she needed an ASL interpreter.  Gund dep. 20:11-16.  During the hearing, Gund admits she utilized the ASL interpreter that was in the courtroom to make a statement, was allowed to do so and succeeded in doing so.  Gund dep. 23:1-14.  She did so even though she does not allege that, prior to making her request, she had any role in the proceeding.  Gund dep. 22:19-25.

Other than communicating with the staff on September 5, 2023, Gund never again communicated with OJD staff requesting an interpreter for herself at any specific hearing.  Gund

Page 7 -   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

dep. 39:13-40:7.[6,7]  She simply assumed that her communication on September 5, 2023 would serve as a blanket request.  To the extent she sent texts on other dates to 503-386-0812, Gund dep. 31:18-32:7, Exh. 101, that phone number is not staffed or monitored and has no recording function.  Hukari Dec. ¶ 2.  The function of that phone number is to send texts to parties in cases reminding them of hearing dates, cancellations or re-scheduled dates.  Hukari Dec. ¶ 2.  It serves an outgoing function only.  *Id.*  Accordingly, any such attempts produced no communication, because that is not the function of the 503-386-0812 number.

On October 11, 2023, Gund attended Jimerson's plea hearing (the second event).  Gund dep. 37:10-17.  There were two ASL interpreters in the courtroom, Damon Thayer and Lisa Crawford.  Gund dep. 38:6-8, 17-19; Underwood Dec. ¶ 4.  *Id.*  Gund does not allege that she informed OJD in advance she would be attending distinct from her September 5th communication.  Gund dep. 39:5-12.  Gund does not allege that she told OJD in advance that she needed an ASL interpreter distinct from her September 5th communication.  *Id.*  She does not allege that she had any role in this proceeding other than as an observer: neither the lawyers in the courtroom nor the judge asked Gund to participate in any manner.  Gund dep. 38:20-25.  Her only role was as an observer.  Gund dep.39:1-3.

---

[6] When initially asked how, other than her September 5th communication, she requested interpreters, Gund responded "I don't remember."  Gund dep. 39:13-20.  On the second day of her deposition, after having time to meet with her counsel, Gund contradicted herself and claimed additional demands for a separate interpreter were made on other days.  Gund dep. 201:19-23.  Regardless, these demands at the help desk were made the same day as each hearing, with no advance notice.  No matter how many times the demands were reportedly made, they were inconsistent with UTCR 7.060(1), which requires at least four-day notice identifying the specific hearing by "time date and estimated length."  UTCR 7.060(2)(f).  Gund admits she knows how to use the internet, Gund dep. 11:15-16, and therefore could have found this rule and the requirements for effective notice.

[7] To the extent Gund may suggest that she also communicated with "Victim's Advocates," those advocates are not employees of OJD, but of the Marion County District Attorney, as Gund is aware.  Gund dep. Exh. 201 at 7, ¶ 25.

Page 8 -   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Gund has attempted to communicate with the courts by calling the telephone number 503-388-0812. Gund dep. Exh. 101. That telephone number is used to send texts to parties in cases reminding them of hearing dates, cancellations or re-scheduled dates. Hukari Dec. ¶ 2. It is not staffed or monitored. *Id.* It cannot receive verbal or texted messages. *Id.* It cannot record any incoming communications. *Id.*

On November 16, 2023, Gund came to Marion County for a status check (the third event). Gund dep. 40:16-19. A status check is, as this Court is aware, a matter between the Court and counsel, in which parties do not attend, let alone ancillary persons, and which is not held on the record. In this case, the conference was held in chambers and without anyone except the judge and counsel. Geyer Dec. ℙ 3. Gund sat outside in the hallway. Gund dep. 41:1-8. Accordingly, there was no reason for Gund to need an interpreter. Regardless, again, she did not allege that she informed OJD in advance she would be attending distinct from her September 5th communication, or communications with the Help Desk. Gund dep. 39:13-40:7. She did not allege that she told OJD in advance that she needed an ASL interpreter distinct from her September 5th communication. *Id.* She had no role in this proceeding. Geyer Dec. ¶ 3.

On December 6, 2023, Gund attended another arraignment for Mr. Jimerson. However, this event was delayed, and there was no proceeding on that date. Gund dep. 41:9-13. It was re-set for December 13, 2023 (the fourth event). *Id.* There was an ASL interpreter, Rich Hall, in the courtroom. Geyer Dec. ¶ 4. Gund had no role in the proceeding. Geyer Dec. ¶ 4. Neither the lawyers in the courtroom nor the judge asked Gund to participate in any manner. Gund dep. 43:16-21. She had no role other than as an observer. Gund dep.43:22-23.

On January 4, 2024, Gund came to Marion County for a status check (the fifth event). Gund dep. 46:3-5. The conference was held in chambers and without anyone except the judge

Page 9 -   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and counsel. Geyer Dec. ⱣP 5. Gund sat outside in the hallway. Gund dep. 46:3-5. Accordingly, there was no reason for Gund to need an interpreter. Regardless, Gund had no role in this proceeding. Geyer Dec. ¶ 5. She was not even in the room for the proceeding. Gund dep. 46:3-5.

On March 7, 2024, Gund came to Marion County for a status check (the sixth event), a conference held in chambers and without anyone except the judge and counsel. Gund dep. 47:5-7, Geyer Dec. Ᵽ 6. Gund sat outside in the hallway. Gund dep. 47:5-7. Accordingly, there was no reason for Gund to need an interpreter. She had no role in this proceeding. Geyer Dec. ¶ 6. She was not even in the room for the proceeding. Gund dep. 47:5-7.

On March 14, 2024, Gund came to the Marion County courthouse for a motion to exclude witnesses in Jimerson's case that was to be heard on that day (the seventh event). Gund acknowledges that there was an interpreter in the courtroom, again Rich Hall. Gund dep. 47:8-23. Nonetheless, she is listed in the court records as a user of the interpretive services. Abrams Dec. Exh. B. Gund was able to utilize Mr. Hall's services. Gund dep. 47:8-48:1.

In addition, Gund admits that Judge Geyer moved her to the counsel's table so that she would have the same view of the interpreter as did Jimerson, and this resolved any potential difficulty. Gund dep. 47:8-48:1. Neither the lawyers in the courtroom nor the judge asked Gund to participate in any manner. Gund dep. 48:2-8. She had no role other than as an observer. Gund dep.48:9-11.

On June 27, 2024, Gund came to Marion County for a status check (the eighth event). Gund dep. 48:12-16. The conference was held in chambers and without anyone except the judge and counsel. Geyer Dec. Ᵽ 8. Gund sat outside in the hallway and was not even in the room for the proceedings. Gund dep. 48:17-19. She was not present in the proceeding. Geyer

Page 10 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Dec. ¶ 8.

On July 11, 2024, Gund attended a hearing in Jimerson's case to request the lifting of the no-contact order between her and Jimerson (the ninth event). Gund dep. 51:2-4. There was an interpreter at the hearing, Damon Thayer. Gund dep. 51:5-7; Tracey Dec. ¶ 3. In fact, there were supposed to be two interpreters, but one did not show. *Id.* Judge Tracey invited Gund to sit at counsel's table in order better to see the ASL interpreter, and this resolved any difficulty. Gund dep. 52:15-18; Tracey Dec ¶ 5. Neither the lawyers in the courtroom nor the judge asked Gund to participate in any manner. Gund dep. 51:16-21. She had no role other than as an observer. Gund dep. 51:22-24.

In sum, of the nine events at which Gund claims an entitlement to a personal interpreter, four (November 16, 2023, January 4, 2024, March 7, 2024 and June 27, 2024) were conferences from which she was excluded and therefore had no need for an interpreter, and there was an interpreter in all five other hearings. Of those five, there was a second interpreter in one (October 11, 2023), there was one where a second interpreter was requested but did not show (July 11, 2023). And there was one—the first hearing on September 5, 2023—as to which OJD could not have known in advance that there would be an asserted need for a second interpreter. As to the final two events—the arraignment on December 13, 2023 and the motion hearing on March 14, 2024—neither involved Gund participating beyond her status as spectator. Gund dep. 43:22-23, 48:9-11. Finally, at the March 14, 2024 and July 11, 2024 proceedings, the judge moved Gund to counsel's table to ameliorate any issue as to seeing the interpreter, which Gund admits solved any problem in both cases. Gund dep. 47:8-48:1, 52:15-18; Tracey Dec. ¶ 5.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LEGAL STANDARDS

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita*, 475 U.S. at 586, n. 11.  The moving party must show the absence of a genuine dispute as to a material fact.  *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "This burden is not a light one * * * The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *Id.*  (citation omitted).

The test is whether a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A scintilla of evidence, or evidence that is merely colorable or not probative, does not present a genuine issue of material fact.  *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989).  Subjective belief—speculation—is also insufficient.  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**ARGUMENT**

**I.    A plaintiff is not entitled to only her preferred accommodation.**

As a threshold issue, the law is clear that one "is not obligated to provide an [individual] the accommodation [s]he requests or prefers, [they] need only provide some reasonable accommodation."[8]  There is no duty to provide the specific accommodation requested or preferred, only *some* reasonable accommodation.  *Hummel v. Maricopa Cnty. Adult Prob. Dep't*, 2021 WL 3787544, at *3 (D. Ariz. Aug. 26, 2021), *aff'd,* 2024 WL 1612221 (9th Cir. Apr. 15, 2024); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002), *citing E.E.O.C. v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 951 (7th Cir.2001) (*en banc*) (citation and internal quotation marks omitted).

Although a public entity must make "reasonable accommodations," it does not have to provide a disabled individual with every accommodation [s]he requests or the accommodation of h[er] choice.  *See Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir.1995).  An accommodation is not reasonable if it would impose an undue hardship on a program's operation or "would fundamentally alter the nature of the service, program, or activity."  *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 88 (2d Cir. 2004) (*citing* 28 C.F.R. §§ 41.53, 35.130(b)(7)) (internal quotation marks omitted); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012).  Gund concedes that there are alternatives, even though she doesn't prefer them, such as "pen and paper."  Gund dep. 14:8-25.

Without going further, this should dispose of the four proceedings (Nov. 16, 2023, Jan. 4,

---

[8] For the purposes of this analysis, there is no difference between the ADA and the Rehab Act beyond the need to show use of federal funds for the Rehab Act.  *Randolph v. Rodgers*, 170 f.3d 850, 850 (8th Cir. 1999).

Page 13 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

2024, Mar. 7, 2024 and June 27, 2024) at which Gund, quite simply, was not in the room. It should also dispose of the two proceedings at which the judges allowed Gund to sit with counsel, which she admits obviated any further need for accommodation. In addition, there should be no need for further consideration of the hearing at which there *were* two interpreters on Oct. 11, 2023.

**II.    Neither the ADA nor the Rehab Act require separate interpreters.**

That leaves only two proceedings for which any further analysis is required, the initial arraignment on September 5, 2023 and the December 13, 2023 arraignment.

As to these, to establish a violation of either the ADA or the Rehab Act, a plaintiff must (1) be a qualified individual with a disability, (2) be denied a reasonable accommodation that is needed "to enjoy meaningful access to the benefits of public services," (3) by a public entity for the ADA or by a program that receives federal funding for the Rehab Act. *Cstoras v. Paradise High School*, 12 F.4th 960, 968 (9th Cir. 2021). The denial of services must be by reason of the individuals' disability. *Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997). OJD does not dispute plaintiff is a person with a disability but does dispute that the provision of two interpreters is necessary for meaningful access to the court system.[9]

It is plaintiff's burden to show that the accommodations were not reasonable. *Duvall v. County of Kitsap*, 260 F. 3rd 1124, 1137 (9th Cir. 2001). Plaintiff also must show that she could not participate equally in the proceedings at issue. *Id.*

The event-by-event analysis has been laid out in the Fact Section and in Section I above. To recap: as to four of the nine events (November 16, 2023, January 4, 2024, March 7, 2024 and

---

[9] And, as set forth in Section IV below, OJD does not receive qualifying federal funding sufficient to trigger application of the Rehab Act.

Page 14 -  MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

June 27, 2024), quite simply, plaintiff had no right of admission, nor would *any* party, hearing or not, and, in fact, Gund was not present. Three of the others, October 11, 2023, March 14, 2024 and July 11, 2024, either had two interpreters or had two requested, and/or had the satisfactory accommodation of moving Gund to counsel's table, meaning even by plaintiff's asserted standard, there was no improper act.

That leaves the initial arraignment on September 5, 2023, and the second arraignment on December 13, 2023.

The initial arraignment, of course, was the first interaction between Jimerson and the court system relating to events at the Camp. There is no possible reason OJD would have had advance knowledge of the need for a second interpreter, even putting aside whether such was required. The events occurred on September 3, 2023, a Sunday. September 4, 2023, was Labor Day, a legal holiday, and the courts were closed. The arraignment occurred on September 5, 2023 at approximately 3:00 p.m. Gund only came up to the desk at the Annex at approximately 12:35 p.m, less than three hours prior to the arraignment. Gund dep. 18:19-19:1, 20:1-18, 21:4-7. It is simply not credible for plaintiff to assert that OJD—which needs to contract with an independent business for one of the eight ASL court certified interpreters in the entire state— would be able instantaneously to conjure one essentially out of thin air. "Accommodations that might be expected when time is of no matter become unreasonable to expect when time is of the essence." *Waller v. City of Danville*, 556 F.3d 171, 175 (4th Cir. 2009).

The second of these hearings was the second arraignment on December 13, 2023, and was held in Judge Geyer's courtroom. Gund dep. 43:12-15; Geyer Dec. ¶ 4. An arraignment is not a time for testimony by non-parties and plaintiff had no role other than observer. *Id*. In other words, she only needed to be where she could have a clear line of sight, and there was no need

Page 15 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

for a separate interpreter to translate for her.  Plaintiff does not have a credible explanation as to why she was unable to see the interpreter who was there.  As the evidence shows, there are no physical impediments to visibility save for the angle at which Gund was seated in trying to view the interpreter.  Gund dep. 44:9-23.  Plaintiff was free to move to any seat behind the bar in order to have a clear view.  It is simply not reasonable to insist that she could not solve her problem simply by shifting her position—or by asking the interpreter present to communicate that she sit at counsel's table as she did in other hearings.  It is simply not reasonable to demand that ODJ must find a second interpreter in a state in which only eight exist for the entire court system.

Essentially, plaintiff's position is that although she could have alleviated any potential difficulties in understanding the proceedings simply by shifting her position, it is legally incumbent on OJD to find a second interpreter.  This argument has been rejected elsewhere. *Loye v. County of Dakota*, 647 F. Supp. 2d 1081, 1088-89 (D. Minn 2009), *aff'd,* 625 F.3d 494 (8th Cir. 2010).  It should be noted that, given plaintiff had no speaking role in this hearing, this second interpreter would presumably be doing *precisely the same thing* as the first interpreter, merely be stationed some small number of feet away.  Neither plaintiff nor defendants have found any case law that requires that burden to be placed on the service provider when such a simple and logical self-help remedy is available.  Indeed, plaintiff must demonstrate that she was "unable to participate equally in the proceedings at issue."  *Duvall, supra*, 260 F.3d at 1137.  Given that her only "participation" was as an observer and given her ability to move around the entire back half of the courtroom, she cannot as a matter of law meet that burden.

III.    **There is no evidence of intent, thus barring an ADA claim.**

Importantly, as this Court has previously noted, plaintiff must prove *intentional* discrimination.  *Cstora, supra*, 12 F.4th at 696; *Duvall, supra*, 260 F.3d at 1138.  Proof of intentional discrimination requires "deliberate indifference."  *Duvall, supra,* at 1139.  Deliberate

Page 16 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

indifference requires both knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood. *Id.*

Defendants note that, in their analysis in Section II above, they have demonstrated that because there was no need for separate interpreters, there perforce was no knowledge that harm to a federally protected right was substantially likely. Nothing in the record alters that conclusion. Plaintiff chose not to depose any OJD personnel except for Kimberly Taylor, Judge Geyer's judicial assistant. Abrams Dec. ¶ 6. Accordingly, she cannot offer anything but speculation as to any ODJ personnel's state of mind or knowledge beyond Ms. Taylor, who is not the person responsible for deciding how to staff a hearing with interpreters. Taylor Dec. ¶ 2.

Because there was no knowledge of a potential harm to a federal right, there is no failure to act. Regardless, again, of the nine matters at issue, plaintiff was not actually present in four, one had two interpreters, in one two interpreters were requested although only one showed, one occurred only minutes after the request for interpretation, and the judges allowed Gund to move to counsel table in two leaving only the December 13, 2023 arraignment for which there even could be a potential failure to act. As to that hearing, however, there was never a request from plaintiff specific to that date, that she receive a separate interpreter. There was no role for her to play other than observer. Accordingly, there was no reason for anyone at OJD to assume there was a need for a second interpreter—a *legal* need as opposed merely to plaintiff's preference. There was no reason to assume that, in Judge Geyer's unobstructed courtroom plaintiff would be unable to see the ASL interpreter who was there.

Plaintiff would have this Court overlook that in *every* one of the five open court events, there *was* an interpreter. This Court should decline that invitation.

Page 17 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

**IV.    OJD does not receive federal funds such that it is subject to the Rehab Act.**

Section 504 of the Rehabilitation Act only applies to "programs or activities" that receive federal funding.  29 U.S.C. § 794(a).  By accepting such federal funding a state only waives its immunity as to the program or activity that receives them.  *Id.*

The OJD as a whole, and overwhelmingly, does not receive federal funds.  Indeed, it directly receives funds only for a single program, the Juvenile Court Improvement Project ("JCIP").  JCIP:

> was established in the early 1990s to administer the federal Court Improvement Program grant from the Children's Bureau, which is awarded to the highest state court in every state to improve court practices in child abuse and neglect cases and to enhance collaboration with local courts, the Oregon Department of Human Services, and Tribes. JCIP's vision is to raise the profile and priority of child abuse and neglect cases in Oregon. JCIP efforts focus on improving legal representation in dependency proceedings, hearing quality, court data, timeliness and quality of permanency, engagement of parties, compliance with the Indian Child Welfare Act (ICWA) and tribal collaboration, and safety decision-making. JCIP is guided by a statewide Advisory Committee, which is intended to collaborate on goals and improvements to Oregon's juvenile dependency system that advance equity, consistency, and improve outcomes for system involved families.

Oregon Judicial Department : Juvenile Court Programs : Juvenile Court Programs : State of Oregon.

According to Oregon's Legislative Fiscal Office, in the last fiscal biennium, ODJ ran on funds totaling $895,191,805, of which only $1,727,199, or 0.19%, were from the federal government.  2025-27 Budget Review – Judicial Department.  Those funds were *only* for the child abuse and neglect cases in family courts.  Not one penny went to administer or operate the general practices of the court system otherwise.

**V.    In any event, the requests for injunctive relief should be dismissed.**

To maintain a request for injunctive relief, a party must demonstrate that there is a "real and immediate threat of repeated injury."  *Fortyune v. Am. Multi-Cinema, Inc*. 364 F.3d 1075,

Page 18 -  MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

1081 (9th Cir. 2004) (*citing O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S. Ct. 669 (1974)).  In the ADA Context, a plaintiff established such a threat if "[s]he intends to return to a noncompliant place of public accommodation where [s]he will likely suffer repeated injury."  *Chapman v. Pier I Imports, Inc.*, 631 F.3d 939, 948 (9th Cir. 2014).  "Alternatively, a plaintiff who 'has visited a public accommodation on a prior occasion' demonstrates a real and immediate threat if [s]he 'is currently deterred from visiting that accommodation by accessibility barriers.'"  *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (*quoting Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008).

In her deposition, plaintiff admitted that she has not entered an Oregon court since the last of the *Jimerson* court dates on July 11, 2024.  Gund dep. 15:20-16:1.  Regardless, UTCR 7.060 provides the mechanism for requesting accommodation—a request to be made four or more days in advance—and there is no reason to believe that should plaintiff ever again interact with the court system and should she provide the four-day notice set forth in that rule (which she did not do in the instant setting) she would encounter "accessibility barriers."

Accordingly, the plaintiff's requests for injunctive relief should be dismissed even if her claims proceed.

### CONCLUSION

For all of the Oregon judicial system, for all the courthouses and all the courtrooms, there are only eight court certified ASL interpreters.  OJD does what it can.  The simple facts of this case are that, of the nine dates at issue, four were counsel-only proceedings at which Ms. Gund was not admitted. At every one of the other five, there was an interpreter, in one case two, and in one case two were requested but only one showed.

Plaintiff would have this Court find that her single comment to the Help Desk at the Courthouse Annex on September 5, 2023 was a sufficient trigger for OJD to find her an independent interpreter for every hearing. That is contrary to UTCR 7.060, and beyond what the ADA or Rehab Act call for.

In addition, plaintiff ignores the required element of intent. Indeed, in the last such hearing OJD tried unsuccessfully to obtain two interpreters. This is a stark contradiction to the idea OJD intended not to provide accommodation.

Neither the law nor the circumstances of the situation call for two interpreters, 25% of the state's available independent contractors, to be in one courtroom—without a full day trial—at once. It is neither legally required nor with rare exception feasible.

For all the reasons stated above, summary judgment should issue dismissing OJD from this action with prejudice.

DATED January 5, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

_s/ Marc Abrams_
MARC ABRAMS, #890149
Assistant Attorney-in-Charge
JILL SCHNEIDER, #001619
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.oregon.gov
jill.schneider@doj.oregon.gov
_Attorneys for Defendant_
_State of Oregon Judicial Department_

Page 20 -  MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

# CERTIFICATE OF SERVICE

I certify that on January 5, 2026, I served the foregoing MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT upon the parties hereto by the method indicated below, and addressed to the following:

Daniel Snyder
Law Offices of Daniel Snyder
1000 SW Broadway, Suite 2400
Portland, OR 97205
dansnyder@lawofficeofdanielsnyder.com
*Of Attorneys for Plaintiff*

   \_\_\_ HAND DELIVERY
   \_\_\_ MAIL DELIVERY
   \_\_\_ OVERNIGHT MAIL
   \_\_\_ TELECOPY (FAX)
   \_\_\_ E-MAIL
   X  E-SERVE

Cody M. Hawkins
Marion County Legal Counsel
555 Court Street NE, Suite 5242
Salem, OR 97309
chawkins@co.marion.or.us
*Of Attorneys for Defendant*
*Marion County*

   \_\_\_ HAND DELIVERY
   \_\_\_ MAIL DELIVERY
   \_\_\_ OVERNIGHT MAIL
   \_\_\_ TELECOPY (FAX)
   \_\_\_ E-MAIL
   X  E-SERVE

Ronald W. Downs
Special Districts Association
P.O. Box 12613, Suite 208
Salem, OR 97309
rdowns@sdao.com
*Of Attorneys for Defendant*
*Stayton Fire District*

   \_\_\_ HAND DELIVERY
   \_\_\_ MAIL DELIVERY
   \_\_\_ OVERNIGHT MAIL
   \_\_\_ TELECOPY (FAX)
   \_\_\_ E-MAIL
   X  E-SERVE

Katie M. Eichner
Lindsay Hart LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201
keichner@lindsayhart.com
*Of Attorneys for Defendant*
*Santiam Medical Hospital*

   \_\_\_ HAND DELIVERY
   \_\_\_ MAIL DELIVERY
   \_\_\_ OVERNIGHT MAIL
   \_\_\_ TELECOPY (FAX)
   \_\_\_ E-MAIL
   X  E-SERVE

    *s/ Marc Abrams*
MARC ABRAMS, #890149
Assistant Attorney-in-Charge
JILL SCHNEIDER, #001619
Senior Assistant Attorney General
Trial Attorneys
marc.abrams@doj.oregon.gov
jill.schneider@doj.oregon.gov
*Of Attorneys for Defendant*
*State of Oregon Judicial Department*

Page 21 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT